UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

---------------------------------- x
:
ONE AND KEN VALLEY HOUSING :
GROUP, A Maine limited partnership, and :
:
TWO AND KEN VALLEY HOUSING :
GROUP, A Maine limited partnership, and :
:
THREE AND KEN VALLEY HOUSING :
GROUP, A Maine limited partnership, and :
:
FIVE AND KEN VALLEY HOUSING :
GROUP, A Maine limited partnership, and :
:
SIX AND KEN VALLEY HOUSING : Civil Action No.
GROUP, A Maine limited partnership, and :
:
:
:
:
Plaintiffs, :
:
v. :
:
MAINE STATE HOUSING AUTHORITY, :
353 Water Street :
Augusta, Maine 04330, :
:
:
Defendant. :
:
---------------------------------- 

# COMPLAINT

## INTRODUCTION

1. Plaintiffs One and Ken Valley Housing Group (the "Island Owner"), Two and Ken Valley Housing Group (the "Lisbon Owner"), Three and Ken Valley Housing Group (the "Meadowbrook Owner"), Five and Ken Valley Housing Group (the "Sherwood Owner") and Six and Ken Valley Housing Group (the "Washington Owner") (jointly, the Island Owner, the

Lisbon Owner, the Meadowbrook Owner, the Sherwood Owner, and the Washington Owner are referred to herein as the "Plaintiffs") bring this action for damages resulting from the failure of the Maine State Housing Authority ("MaineHousing") to provide for automatic annual rent adjustments for contract years beginning in the middle 1990s to the present for the properties they own that participate in the Section 8 program for State Housing Agencies. Pursuant to the Housing Assistance Payment Contracts ("HAP Contracts") entered into between each of the Plaintiffs and MaineHousing, the Plaintiffs are entitled to annual rent increases for the subject properties more fully described herein. MaineHousing and its agents have breached the HAP Contracts by their failure and subsequent refusal to grant rent adjustments mandated by the HAP Contracts, resulting in damages to the Plaintiffs. The Plaintiffs have also been damaged because they have not received the full amount of rent adjustments for units that did not "turn over" during preceding contract years, and because, to the extent that they have requested rent adjustments, they have been required to obtain and pay for rent comparability studies, in violation of the provisions of their HAP Contracts. In addition to the monetary damages to which the Plaintiffs are entitled, the Plaintiffs ask the Court to direct MaineHousing to adjust the current Contract Rents to reflect the adjustments that MaineHousing has failed and subsequently refused to make, and to make future rent adjustments in a manner that is consistent with the requirements of the Plaintiffs' HAP Contracts.

**JURISDICTION AND VENUE**

2. This Court has jurisdiction over this matter under 28 U.S.C. § 1331.

3. Venue in this Court is proper under 28 U.S.C. § 1391(b).

## PARTIES

4. Plaintiff One and Ken Valley Housing Group ("Island Owner") is a limited partnership formed under the laws of Maine. Island Owner is the owner of Island Apartments ("Island Property"), a 23-unit multifamily housing rental property located in Fairfield, Maine.

5. Plaintiff Two and Ken Valley Housing Group (the "Lisbon Owner) is a limited partnership formed under the laws of Maine. Lisbon Owner is the owner of Lisbon Senior Village Apartments ("Lisbon Property"), a 20-unit multifamily housing rental property located in Lisbon, Maine.

6. Plaintiff Three and Ken Valley Housing Group ("Meadowbrook Owner") is a limited partnership formed under the laws of Maine. Meadowbrook Owner is the owner of Meadowbrook Apartments ("Meadowbrook Property"), a 24-unit multifamily housing property located in Livermore Falls, Maine.

7. Plaintiff Five and Ken Valley Housing Group ("Sherwood Owner") is a limited partnership formed under the laws of Maine. Sherwood Owner is the owner of Sherwood Forest Apartments ("Sherwood Property"), a 26-unit multifamily housing rental property located in Skowhegan, Maine.

8. Plaintiff Six and Ken Valley Housing Group ("Washington Owner") is a limited partnership formed under the laws of Maine. Washington Owner is the owner of Washington House Apartments ("Washington Property"), a 53-unit multifamily housing rental project located in Bath, Maine. Together, Island Property, Lisbon Property, Meadowbrook Property, Sherwood Property, and Washington Property are referred to herein as the "Plaintiffs' Properties."

9. MaineHousing was created under the laws of Maine. MaineHousing is a "state agency" that participates in HUD's Section 8 program, pursuant to 24 C.F.R. Part 883, and a public housing agency, as defined by Section 3 of the United States Housing Act of 1937, 42

U.S.C. § 1437a. This action is brought against MaineHousing pursuant to 30 A.M.R.S. §§ 4722 and 4741.

## BACKGROUND FACTS

### The Section 8 Program

10. Each Plaintiff Property is a multifamily rental housing property that receives assistance pursuant to the U.S. Department of Housing and Urban Development's ("HUD") project-based Section 8 Program, codified at 42 U.S.C. § 1437f. HUD has issued regulations governing the Section 8 program for State Housing Agencies at 24 C.F.R Part 883.

11. MaineHousing participates in the Section 8 program, and for each Plaintiff Property, it receives payments, referred to as annual contributions, from HUD, pursuant to an Annual Contributions Contract ("ACC") with HUD. MaineHousing in turn remits a portion of the annual contributions to the individual Plaintiffs as housing assistance payments, pursuant to Housing Assistance Payments Contracts ("HAP Contracts") it has entered into with each of the Plaintiffs for units in the Plaintiffs' Properties under lease by lower-income families. HUD regulations provide that the HAP Contract "sets forth the rights and duties of the parties with respect to the project and the payments under the Contract." 24 C.F.R. § 883.302 (2009).

12. Under the provisions of 42 U.S.C. § 1437f(c)(1), the housing assistance payments provided by MaineHousing are designed to reimburse the Plaintiffs for the difference between the rent called for under their respective HAP Contracts for each unit ("Contract Rent") and the amount paid by each leasing family.

13. The HAP Contracts between Plaintiffs and MaineHousing provide that the Plaintiffs are entitled to an automatic annual adjustment to the contract rents provided pursuant to the HAP Contracts. Specifically, Section 1.9(b) of each Plaintiffs' HAP Contract, entitled

"Automatic Annual Adjustments," contains a mechanism whereby the Contract Rent due the Plaintiffs is to be adjusted automatically on an annual basis and provides in full as follows:

> (1) Automatic Annual Adjustment Factors will be determined by the Government at least annually. Interim revisions may be made as market conditions warrant. Such Factors and the basis for their determination will be published in the Federal Register. These published Factors will be reduced appropriately by the Government where utilities are paid by the Families.
>
> (2) On each anniversary date of the Contract, the Contract Rents shall be adjusted by applying the applicable Automatic Annual Adjustment Factor most recently published by the Government. Contract Rents may be adjusted upward or downward, as may be appropriate; however, in no case shall the adjusted Contract Rents be less than the Contract Rents on the effective date of the Contract.

This language appears in the HAP Contracts for each of the Plaintiffs' Properties. See Exhibits 1 – 5 hereof, Section 1.9(b).

14. Although the Plaintiffs' properties have received individual rent adjustments from time to time, MaineHousing has not made rent adjustments or adjustments to the housing assistance payments payable under the HAP Contracts between Plaintiffs and MaineHousing pursuant to the terms of the Plaintiffs' respective HAP Contracts since the mid-1990s. The failure of MaineHousing to adjust the rents, and make the housing assistance payments to which Plaintiffs are entitled under the HAP Contracts, constitutes a breach of the HAP Contracts between Plaintiffs and MaineHousing.

15. Since the enactment of the Section 8 program, HUD has published Automatic Annual Adjustment Factors ("AAAFs") in the Federal Register. Until 1994, MaineHousing made rent adjustments for each of the Plaintiffs' Properties by applying these AAAFs to existing Contract Rents, pursuant to the provisions of Section 1.9(b) of the Plaintiffs' respective HAP Contracts.

16. In 1994, Congress dramatically altered the manner in which contract rents at Section 8 properties would be adjusted in order to reduce expenditures for Section 8 rental assistance. Specifically, Congress adopted the "Departments of Veterans Affairs and Housing and Urban Development and Independent Agencies Appropriations Act, 1995," P.L. No. 103-327, 108 Stat. 2298, 2315 (1994) (the "1994 Act"). Rather than provide automatic annual adjustments pursuant to the provisions of Section 1.9(b) of the Plaintiffs' respective HAP Contract, the 1994 Act provide that, where a Section 8 property's contract rents exceed the "fair market rental for an existing dwelling unit in the market area," no rent adjustment would be made except "to the extent that the owner demonstrates that the adjusted rent would not exceed the rent for an unassisted unit of similar quality, type, and age in the same market area." Id. at 2315. Owners seeking a rent adjustment would have to pay to obtain a rent comparability study to document the rents for comparable unassisted units.

17. Compounding its alterations of the rent adjustment provisions of the HAP Contract, the 1994 Act imposed a rule that arbitrarily reduced the rent adjustment for any units in a Section 8 project that did not "turn over" during the prior contract year (that is, the same tenant family lived in the unit during the prior contract year). In such cases, the AAAF for the "non-turnover" unit was reduced by 0.01 (except that the factor may not be reduced to less than 1.0). P.L. No. 103-327, 108 Stat. 2298, 2315 (1994). For example, if the published AAAF was 1.03 for a given year, the rent adjustment for a non-turnover unit would be reduced to 1.02 – the equivalent of a 33% reduction in the rent adjustment for that year. The Plaintiffs' HAP Contracts contain no provision allowing HUD to establish a separate AAAF for non-turnover units.

12831350.1

- 6 -

18. The alterations made by the 1994 Act originally applied only to Fiscal Year 1995, but were extended to apply to Fiscal years 1996, 1997 and 1998, and were made permanent beginning with Fiscal Year 1999.

19. To implement the rent adjustment provisions of the 1994 Act, HUD issued Notice H 95-12 ("Notice H 95-12") on March 7, 1995.

20. Rather than receive the "automatic annual adjustment" provided by Section 1.9(b) of an owner's HAP Contracts, Notice H 95-12 (and subsequent implementing Notices issued by HUD) required that if an owner wished to receive an annual rent adjustment, and if the property's contract rents exceed the applicable Fair Market Rents published by HUD, the owner was required to submit an "Estimate of Market Rent by Comparison" on form HUD-92273 ("Form 92273") at least sixty days before the anniversary date of the owner's HAP Contract. Thus, as a result of the 1994 Act and Notice H 95-12 and its progeny, an owner who was otherwise entitled to receive an "automatic annual adjustment" pursuant to the terms of the HAP Contract would only receive that adjustment if it submitted Form 92273 and presented rent comparability data satisfying the 1994 Act's criteria for receiving a rent adjustment.

**Island Property**

21. The Island Property was built under HUD's Section 8 Program for State Housing Agencies. The property consists of 23 one-bedroom units. The project operates as elderly housing under the Section 8 program.

22. The original owner of the Island Property was Island Apartment Associates ("Island Associates"), a Maine limited partnership. In 1989, Island Associates sold the Island Property to the Island Owner.

23. Island Associates entered into a HAP Contract (the "Island Contract") with MaineHousing. A copy of the Contract is attached as Exhibit 1. HUD signed and approved the

Island Contract. Ex. 1, pg. 6. The effective date of the Island Contract was May 11, 1979. The Island Property was assigned HUD project no. ME 36-H017-167.

24. On September 28, 1989, Island Associates assigned all of its right, title and interest in the Island Contract to Island Owner. HUD and MaineHousing approved the assignment of the Island Contract from Island Associates to Island Owner in 1989.

25. The initial term of the Island Contract was five years. Ex. 1, Sections 1.1(b), 1.4. The Island Contract is automatically renewable for five additional 5-year terms, subject to the renewal terms of the HAP Contract. Ex. 1, Sections 1.1(c), 1.4.

26. The Island Contract contains the annual rent adjustment provision quoted in Para. 13 above, and the Island Property is therefore entitled to an "automatic annual adjustment" on the "anniversary date of the [HAP] Contract." Ex. 1, Section 1.9(b). The "anniversary date of the Contract" between the Island Owner and MaineHousing is the effective date of the Contract. Accordingly, May 11 is the anniversary date on which MaineHousing is required under the Island Contract to adjust the Contract Rents at the Island Property for the units covered by that contract.

27. The initial Contract Rent for the one-bedroom units at the Island Property was $426.

28. Before Notice H 95-12 was issued, the Contract Rent for each unit type at Island Property was increased annually by MaineHousing, as required by the Island Contract. There were no adjustments to the Contract Rents at Island Property from May 1995 until December 1, 2005. On December 1, 2005, Contract Rents at Island Property were raised to $988. Effective May 11, 2009, the Island Contract was renewed for a 20-year term.

29.     Although there have been increases in the Contract Rent at the Island Property since Notice H 95-12 was issued, the Contract Rents have not been increased annually as required by the Island Contract. In addition, the increases that have been made were less than the amount to which the Island Owner was entitled under the Island Contract.

### Lisbon Property

30.     The Lisbon Property was built under HUD's Section 8 Program for State Housing Agencies. The property consists of 20 units, including 16 one-bedroom units and 4 two-bedroom units. The project operates as elderly housing under the Section 8 program.

31.     The original owner of the Lisbon Property was Lisbon Senior Village Associates ("Lisbon Associates"), a Maine limited partnership. In 1989, Lisbon Associates sold the Lisbon Property to the Lisbon Owner.

32.     Lisbon Associates entered into a HAP Contract (the "Lisbon Contract") with MaineHousing. A copy of the Contract is attached as Exhibit 2. HUD signed and approved the Lisbon Contract. Ex. 2, pg. 6. The effective date of the Lisbon Contract was December 30, 1977. The Lisbon Property was assigned HUD project no. ME 36-H017-011.

33.     In 1989, Lisbon Associates assigned all of its right, title and interest in the Lisbon Contract to Lisbon Owner. HUD and MaineHousing approved the assignment of the Lisbon Contract from Lisbon Associates to Lisbon Owner in 1989.

34.     The initial term of the Lisbon Contract was five years. Ex. 2, Sections 1.1(b), 1.4. The Lisbon Contract is automatically renewable for seven additional five-year terms, subject to the renewal terms of the HAP Contract. Ex. 2, Sections 1.1(c), 1.4.

35.     The Lisbon Contract contains the annual rent adjustment provision quoted in Para. 13, above, and the Lisbon Property is therefore entitled to an "automatic annual adjustment" on the "anniversary date of the [HAP] Contract." Ex. 2, Section 1.9(b). The "anniversary date of

the Contract" between the Lisbon Owner and MaineHousing is the effective date of the Contract. Accordingly, December 30 is the anniversary date on which MaineHousing is required under the Lisbon Contract to adjust the Contract Rents at the Lisbon Property for the units covered by that contract.

36. The initial Contract Rent for the one-bedroom units at the Lisbon Property was $338 and for two bedroom units, the initial Contract Rent was $385.

37. Before Notice H 95-12 was issued, the Contract Rent for each unit type at the Lisbon Property was increased annually by MaineHousing, as required by the Lisbon Contract. There were no adjustments to the Contract Rents at Lisbon Property from December 1994 until December 1, 2005. On December 1, 2005, Contract Rents at the Lisbon Property were raised to $726 – 729 for one bedroom units, and $807 – 815 for two-bedroom units.

38. Although there have been increases in the Contract Rent at the Lisbon Property since Notice H 95-12 was issued, the Contract Rents have not been increased annually as required by the Lisbon Contract. In addition, the increases that have been made were less than the amount to which the Lisbon Owner was entitled under the Lisbon Contract.

**Meadowbrook Property**

39. The Meadowbrook Property was built under HUD's Section 8 Program for State Housing Agencies. The property consists of 24 units, including four two-bedroom units, 18 three-bedroom units, and two four-bedroom units. The property operates as family housing under the Section 8 program.

40. The original owner of the Meadowbrook Property was Meadow Brook Associates ("Meadow Brook Associates"), a Maine limited partnership. In 1989, Meadow Brook Associates sold the Meadowbrook Property to the Meadowbrook Owner.

41. Meadow Brook Associates entered into a HAP Contract (the "Meadowbrook Contract") with MaineHousing. A copy of the Contract is attached as Exhibit 3. HUD signed and approved the Meadowbrook Contract. Ex. 3, pg. 6. The effective date of the Meadowbrook Contract was September 19, 1978. The Meadowbrook Property was assigned HUD project no. ME 36-H017-061.

42. In 1989, Meadow Brook Associates assigned all of its right, title and interest in the Meadowbrook Contract to the Meadowbrook Owner. HUD and MaineHousing approved the assignment of the Meadowbrook Contract from Meadow Brook Associates to Meadowbrook Owner in 1989.

43. The initial term of the Meadowbrook Contract was five years. Ex. 3, Sections 1.1(b), 1.4. The Meadowbrook Contract is automatically renewable for seven additional 5-year terms, subject to the renewal terms of the HAP Contract. Ex. 3, Sections 1.1(c), 1.4.

44. The Meadowbrook Contract contains the annual rent adjustment provision quoted in Para. 13, above, and the Meadowbrook Property is therefore entitled to an "automatic annual adjustment" on the "anniversary date of the [HAP] Contract." Ex. 3, Section 1.9(b). The "anniversary date of the Contract" between the Meadowbrook Owner and MaineHousing is the effective date of the Contract. Accordingly, September 19 is the anniversary date on which MaineHousing is required under the Meadowbrook Contract to adjust the Contract Rents at the Meadowbrook Property for the units covered by that contract.

45. The initial Contract Rent for the two-bedroom units at the Meadowbrook Property was $340; the initial Contract Rent for three-bedroom units was $417, and the initial Contract Rents for four-bedroom units was $502.

46. Before Notice H 95-12 was issued, the Contract Rent for each unit type at Meadowbrook Property was increased annually by MaineHousing, as required by the Meadowbrook Contract. There were no adjustments to the Contract Rents at Meadowbrook Property from August 1, 1994 until December 1, 2005 for the three- and four-bedroom units and no rent adjustments at all for two-bedroom units. On December 1, 2005, Contract Rents at the Meadowbrook Property were raised to $743 for three-bedroom units and $856 for four-bedroom units

47. Although there have been increases in the Contract Rent at the Meadowbrook Property since Notice H 95-12 was issued, the Contract Rents have not been increased annually as required by the Meadowbrook Contract. In addition, the increases that have been made were less than the amount to which the Meadowbrook Owner was entitled under the Meadowbrook Contract.

**Sherwood Property**

48. The Sherwood Property was built under HUD's Section 8 Program for State Housing Agencies. The property consists of 26 units, including 10 one-bedroom units, 10 two-bedroom units, and 6 three-bedroom units. The project operates as elderly and family housing under the Section 8 program.

49. The original owner of the Sherwood Property was Sherwood Forest Associates ("Sherwood Associates"), a Maine limited partnership. In 1989, Sherwood Associates sold the Sherwood Property to the Sherwood Owner.

50. Sherwood Associates entered into a HAP Contract (the "Sherwood Contract") with MaineHousing. A copy of the Contract is attached as Exhibit 4. HUD signed and approved the Sherwood Contract. Ex. 4, pg. 6. The effective date of the Sherwood Contract was December 30, 1976. The Sherwood Property was assigned HUD project no. ME 36-H017-024.

51. In 1989, Sherwood Associates assigned all of its right, title and interest in the Sherwood Contract to the Sherwood Owner. HUD and MaineHousing approved the assignment of the Sherwood Contract from Sherwood Associates to the Sherwood Owner in 1989.

52. The initial term of the Sherwood Contract was five years. Ex. 4, Sections 1.1(b), 1.4. The Sherwood Contract is automatically renewable for six additional 5-year terms and one additional term of 2.5 years, subject to the renewal terms of the HAP Contract. Ex. 4, Sections 1.1(c), 1.4.

53. The Sherwood Contract contains the annual rent adjustment provision quoted in Para. 13, above, and the Island Property is therefore entitled to an "automatic annual adjustment" on the "anniversary date of the [HAP] Contract." Ex. 4, Section 1.9(b). The "anniversary date of the Contract" between Plaintiff and MaineHousing is the effective date of the Contract. Accordingly, December 30 is the anniversary date on which MaineHousing is required under the Sherwood Contract to adjust the Contract Rents at the Sherwood Property for the units covered by that contract.

54. The initial Contract Rent for the one-bedroom units at the Sherwood Property was $337; the initial Contract Rent for two-bedroom units there was $366 and $383; and the initial Contract Rent for three-bedroom units was $443. These initial Contract Rents were supposed to include a 10% increase over the fair market rents at that time.

55. Before Notice H 95-12 was issued, the Contract Rent for each unit type at the Sherwood Property was increased annually by MaineHousing, as required by the Sherwood Contract. There were no adjustments to the Contract Rents at the Sherwood Property from December 30, 1994 until December 1, 2005. On December 1, 2005, Contract Rents at the

Sherwood Property were raised to $682, $716 – 783, and $813 for one-, two- and three-bedroom units, respectively.

56. Although there have been increases in the Contract Rent at the Sherwood Property since Notice H 95-12 was issued, the Contract Rents have not been increased annually as required by the Sherwood Contract. In addition, the increases that have been made were less than the amount to which the Sherwood Owner was entitled under the Sherwood Contract.

**Washington Property**

57. The Washington Property was built under HUD's Section 8 Program for State Housing Agencies. The property consists of 53 units, including 42 one-bedroom units, 2 two-bedroom units, and 9 efficiency units. The project operates as elderly housing under the Section 8 program.

58. The original owner of the Washington Property was Washington House Associates ("Washington Associates"), a Maine limited partnership. In 1989, Washington Associates sold the Washington Property to the Washington Owner.

59. Washington Associates entered into a HAP Contract (the "Washington Contract") with MaineHousing. A copy of the Contract is attached as Exhibit 5. HUD signed and approved the Washington Contract. Ex. 5, pg. 6. The effective date of the Washington Contract was May16, 1977. The Washington Property was assigned HUD project no. ME 36-H017-025.

60. On March 10, 1989, Washington Associates assigned all of its right, title and interest in the Washington Contract to the Washington Owner. HUD and MaineHousing approved the assignment of the Washington Contract from Washington Associates to the Washington Owner in 1989.

61. The initial term of the Washington Contract was five years. Ex. 5, Sections 1.1(b), 1.4. The Washington Contract is automatically renewable for six additional 5-year terms, subject to the renewal terms of the HAP Contract. Ex. 5, Sections 1.1(c), 1.4.

62. The Washington Contract contains the annual rent adjustment provision quoted in Para. 13, above, and the Island Property is therefore entitled to an "automatic annual adjustment" on the "anniversary date of the [HAP] Contract." Ex. 5, Section 1.9(b). The "anniversary date of the Contract" between the Washington Owner and MaineHousing is the effective date of the Contract. Accordingly, May 16 is the anniversary date on which MaineHousing is required under the Washington Contract to adjust the Contract Rents at the Washington Property for the units covered by that contract.

63. The initial Contract Rent for the one-bedroom units at the Washington Property was $391; the initial Contract Rents for the two-bedroom units there was $395; and the initial Contract Rents for the efficiency units there was $329.

64. Before Notice H 95-12 was issued, the Contract Rent for each unit type at the Washington Property was increased annually by MaineHousing, as required by the Washington Contract. There were no adjustments to the Contract Rents at Washington Property from May 16, 1996 until May 16, 2005. On May 16, 2005, Contract Rents at the Washington Property were raised to $847, $943, and $952 respectively for efficiency, one- , and two-bedroom units. Although there have been increases in the Contract Rent at the Washington Property since Notice H 95-12 was issued, the Contract Rents have not been increased annually as required by the Washington Contract. In addition, the increases that have been made were less than the amount to which Washington Owner was entitled under the Washington Contract.

## COUNT I - BREACH OF CONTRACT

### (Failure to Increase Contract Rents)

65. Plaintiffs reallege and incorporates by reference each and every allegation set forth in paragraphs 1-64 above.

66. Under the HAP Contracts between Plaintiffs and MaineHousing, Plaintiffs are entitled, on the anniversary date of each stage of their Contracts, to an annual rent adjustment according to the AAAF published by HUD, in the Contract Rents at Plaintiffs' Properties.

67. Notwithstanding the terms of the HAP Contracts between Plaintiffs and MaineHousing, MaineHousing has not increased the Contract Rents at Plaintiffs' projects annually, as required by the HAP Contracts, since HUD issued Notice H 95-12 on March 7, 1995. In addition, the increases to the Contract Rents at the Plaintiffs' Properties made by MaineHousing since Notice H 95-12 was issued were for an amount less than the amount to which Plaintiffs were entitled under their HAP Contracts with MaineHousing.

68. MaineHousing's failure to increase the Contract Rents at Plaintiffs' projects in accordance with the terms of Plaintiffs' HAP Contracts since HUD issued Notice H 95-12 constitutes a breach of the HAP Contracts between Plaintiffs and MaineHousing.

69. This breach of Plaintiffs' HAP Contracts by MaineHousing has damaged Plaintiffs by reducing the Contract Rents that are required by the Contracts which, in turn, has reduced the housing assistance payments to which Plaintiffs are entitled under Plaintiffs' HAP Contracts with MaineHousing.

## COUNT II-BREACH OF CONTRACT

### (Reduction in Automatic Annual Adjustment Factors)

70. Plaintiffs reallege and incorporates by reference each and every allegation set forth in paragraphs 1-69 above.

71. Since Notice H 95-12 was issued, HUD has published two tables of AAAFs in the Federal Register. Table 1 has been applicable to "turnover units," that is, units occupied by a family different than the one that occupied the unit when the project's most recent annual rent adjustment occurred. For "non-turnover units" – that is, those units that were occupied by the same family that occupied it at the time of the last rent adjustment – a separate set of AAAFs, Table 2, was published, that reduces that AAAFs published in Table 1 by 0.01 (except no factor was reduced below 1.0).

72. Since Notice H 95-12 was issued, MaineHousing has applied the reduced AAAFs in Table 2, which are 0.01 less than the AAAFs that would otherwise apply, to non-turnover units at the Plaintiffs' Properties.

73. Any reduction by MaineHousing of the AAAF or non-turnover units at Plaintiffs' projects results in Contract Rents that are lower than the Contract Rents to which Plaintiffs are entitled under the HAP Contracts between Plaintiffs and MaineHousing. This constitutes a breach of the HAP Contracts between Plaintiffs and MaineHousing and damages Plaintiffs by reducing the Contract Rents, and the housing assistance payments, to which Plaintiffs are entitled under their HAP Contracts with MaineHousing.

## COUNT III-BREACH OF CONTRACT

### (Rent Comparability Study)

74. Plaintiffs reallege and incorporates by reference each and every allegation set forth in paragraphs 1-73 above.

75. MaineHousing requires Plaintiffs, and other Section 8 project owners, to submit a Rent Comparability Study, prepared at Plaintiffs' expense, before deciding whether to increase the Contract Rents at Plaintiffs' projects.

76. In 2005, Island Owner submitted a Rent Comparability Study in connection with a rent increase request submitted by Island Owner to MaineHousing.

77. In 2005, Lisbon Owner submitted a Rent Comparability Study in connection with a rent increase request submitted by Lisbon Owner to MaineHousing.

78. In 2005, Meadowbrook Owner submitted a Rent Comparability Study in connection with a rent increase request submitted by Meadowbrook Owner to MaineHousing.

79. In 2005, Sherwood Owner submitted a Rent Comparability Study in connection with a rent increase request submitted by Sherwood Owner to MaineHousing.

80. In 2005, Washington Owner submitted a Rent Comparability Study in connection with a rent increase request submitted by Washington Owner to MaineHousing.

81. No provision or Plaintiffs' HAP Contracts with MaineHousing requires Plaintiffs to submit a Rent Comparability Study before receiving the annual rent increase to which Plaintiffs are entitled under their HAP Contracts.

82. The requirement to submit a Rent Comparability Study imposed by MaineHousing on Plaintiffs constitutes a breach of the HAP Contracts between Plaintiffs and MaineHousing.

83. Plaintiffs have been damaged by this breach by MaineHousing of the HAP Contracts between Plaintiffs and MaineHousing through the cost incurred by Plaintiffs in obtaining the Rent Comparability Studies and updates submitted by Plaintiffs to MaineHousing .

WHEREFORE, Plaintiffs pray that the Court:

    (i)    Find that MaineHousing has breached the HAP Contracts between Plaintiffs and MaineHousing;

    (ii)    Award Plaintiffs damages for the breaches by MaineHousing of Plaintiffs' HAP Contracts with MaineHousing;

(iii) Order MaineHousing to increase the current Contract Rents at Plaintiffs' projects to reflect the annual increases to which Plaintiffs have been entitled in accordance with the HAP Contracts between Plaintiffs and MaineHousing;

(iv) Order MaineHousing to make future rent adjustments without regard to the provisions of the 1994 Act or Notice H 95-12 (and its progeny);

(v) Award Plaintiffs interest on their damages as allowed by law, and their costs and expenses of this action, including attorney fees; and

(vi) Award any other relief to which Plaintiffs are entitled or that the Court determines is appropriate.

Dated: December 28, 2009

Respectfully Submitted,

One and Ken Valley Housing Group, Two and Ken Valley Housing Group, Three and Ken Valley Housing Group, Five and Ken Valley Housing Group and Six and Ken Valley Housing Group

By and through its counsel

NIXON PEABODY LLP

/s/ Courtney Q. Brooks
W. Scott O'Connell, Esq. (Bar No. 8500)
soconnell@nixonpeabody.com
Courtney Q. Brooks, Esq. (Bar No. 004028)
cbrooks@nixonpeabody.com
NIXON PEABODY LLP
900 Elm Street
Manchester, NH 03101
P: 603-628-4000

*Of Counsel:*

Harry J. Kelly, Esq.
hkelly@nixonpeabody.com
NIXON PEABODY LLP
401 Ninth Street, N.W., Suite 900
Washington, D.C. 20004
P: 202-585-8712