UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

ONE AND KEN VALLEY HOUSING      )
GROUP, *et al.*,                )
                                )
            Plaintiffs,         )
                                )
    v.                          )        1:09-cv-00642-DBH
                                )
MAINE STATE HOUSING             )
AUTHORITY,                      )
                                )
            Defendant and       )
            Third-Party Plaintiff, )
                                )
    v.                          )
                                )
SHAUN DONOVAN, Secretary,       )
United States Department of Housing )
and Urban Development,          )
                                )
            Third-Party Defendant )

RECOMMENDED DECISION ON THIRD-PARY DEFENDANT'S
MOTION FOR PARTIAL DISMISSAL OF THIRD-PARTY COMPLAINT

This case presents a first-party contract action between plaintiff owners of Section 8

housing projects (five Maine entities) and the Defendant, the Maine State Housing Authority.

Although the parties are not diverse, the Court has determined that federal question jurisdiction

exists over their contract dispute due to embedded federal questions arising from congressional

amendment of the federal Section 8 housing program and breaches of contract that allegedly

flowed from administrative implementation of the amended statutory scheme.  Subsequent to

that jurisdictional determination and denial of the Authority's motion to dismiss the case on

jurisdictional grounds, the Authority filed a third-party action against Shaun Donovan, in his

official capacity as the Secretary of the United States Department of Housing and Urban Development (HUD).  The third-party complaint asserts not only a claim in contract (count II), but also a claim under the Administrative Procedures Act (count I) and a claim under the Declaratory Judgment Act (count III).  HUD has filed a motion to dismiss all third-party claims except for part of the contract claim in count II.  (Partial Mot. to Dismiss Third-Party Compl., Doc. No. 54.)

The Court referred the motion for report and recommendation pursuant to 28 U.S.C. § 636.  On June 8, 2011, the Authority and HUD appeared through counsel for oral argument.  I scheduled oral argument out of concern that, if the Court dismissed the APA claim in count I, the Court might lack jurisdiction to retain the remaining third-party contract claim against HUD because that claim seeks contract proceeds in excess of $10,000, suggesting that the Court of Federal Claims may have "exclusive" jurisdiction under the Tucker Act.  At oral argument, counsel for HUD acknowledged that HUD has challenged the existence of subject matter jurisdiction in analogous contract proceedings in the past, but offered that HUD's current position is that the district courts have jurisdiction over such claims based on the holding of Federal Housing Authority v. Burr, 309 U.S. 242 (1940) (recognizing "right to garnishee" federal agencies), and the combination of the waiver of sovereign immunity found in 42 U.S.C. § 1404a and the jurisdictional grant over federal questions found in 28 U.S.C. § 1331.  The Authority agreed with and separately advanced this proposition at oral argument (as well as in its memorandum of law).  In essence, the Authority and HUD agree that the Tucker Act does not strip this Court of jurisdiction over the third-party contract action because the section 1404a waiver[1] restricts HUD's liability to funds within HUD's exclusive control and, therefore, the

---

[1]      Section 1404a of the Housing Act provides:

2

third-party action (should it be regarded as exclusively a contract action) is not against the United States for purposes of the Tucker Act.

For reasons that follow, I recommend that the Court grant HUD's motion to dismiss the Administrative Procedures Act claim in count I.  As for count II, I recommend that the Court exercise jurisdiction over the contract claim, and grant the motion to dismiss the portions of this claim that allege a right to indemnification and a right to recovery concerning breaches that allegedly occurred beyond the six-year statute of limitation.  As for count III, I recommend that the Court grant the motion to dismiss, in part, and dismiss that portion of the Authority's declaratory judgment/injunctive remedy plea which seeks an order about what HUD "shall" do respecting future rent adjustments or a declaration of rights respecting contracts with project owners who are not party to this litigation.  Finally, I recommend that the Court strike the Authority's demand for trial by jury.

## RULE 12

Pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, a party may plead the defense of lack of subject matter jurisdiction by motion to dismiss, prior to filing an answer to a complaint.  The court is free to consider extrinsic evidence in determining subject matter jurisdiction, whether that evidence is introduced by the plaintiff or by the defendant, and the burden falls on the plaintiff to prove that subject matter jurisdiction exists.  <u>Aversa v. United</u>

---

The Secretary of Housing and Urban Development may sue and be sued only with respect to its functions under the United States Housing Act of 1937, as amended, and title II of Public Law 671, Seventy-sixth Congress, approved June 28, 1940, as amended.  Funds made available for carrying out the functions, powers, and duties of the Secretary of Housing and Urban Development (including appropriations therefor, which are hereby authorized) shall be available, in such amounts as may from year to year be authorized by the Congress, for the administrative expenses of the Secretary of Housing and Urban Development.  . . .

42 U.S.C. § 1404a.

States, 99 F.3d 1200, 1209-10 (1st Cir. 1996).  Ordinarily, a court should resolve challenges to its exercise of jurisdiction over the subject matter of a case before proceeding to address the merits.  Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94 (1998);  Donahue v. City of Boston, 304 F.3d 110, 117 (1st Cir. 2002).

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a complaint can be dismissed for "failure to state a claim upon which relief can be granted."  In deciding a motion to dismiss, the court accepts as true the factual allegations of the complaint, draws all reasonable inferences in favor of the plaintiff that are supported by the factual allegations, and determines whether the complaint, so read, sets forth a plausible basis for recovery.  Trans-Spec Truck Serv., Inc. v. Caterpillar Inc., 524 F.3d 315, 320 (1st Cir. 2008).  HUD's statute of limitation defense to a portion of the third-party contract claim comes under Rule 12(b)(6).  Santana-Castro v. Toledo-Davila, 579 F.3d 109, 113-14 (1st Cir. 2009).

HUD's assertions that federal law bars both implied contract claims seeking indemnification from an agency of the United States and injunctive/declaratory relief respecting future performance of a contract might be regarded as presenting a question of immunity under Rule 12(b)(1) or a pleading issue falling under Rule 12(b)(6).  The difference is not always easy to deduce when sovereign immunity is implicated.  However, the difference is immaterial insofar as either approach to the question calls for dismissal of those claims with prejudice.

### THE THIRD-PARTY CLAIMS

In this action, Plaintiffs One and Ken Valley Housing Group, Two and Ken Valley Housing Group, Three and Ken Valley Housing Group, Five and Ken Valley Housing Group, and Six and Ken Valley Housing Group are entities owning housing projects that participate in the U.S. Department of Housing and Urban Development's (HUD's) Section 8 housing program.

Plaintiffs are pursuing claims against the Maine State Housing Authority for alleged breaches of housing assistance payment contracts ("HAP contracts"). Plaintiffs assert three counts in their complaint (Doc. No. 1), each styled as a breach of contract claim and each alleging contract damages. In their plea for relief, Plaintiffs request contract damages and an order directing the Authority to increase rent subsidies in accordance with contract provisions for purposes of future payments under their HAP contracts.

Following a failed attempt to obtain dismissal of the case, the Authority filed a third-party complaint (Doc. No. 48) against Shaun Donovan, Secretary of HUD, because, for every HAP contract between a plaintiff and the Authority, the Authority entered into a corresponding "annual contributions contract" with HUD, which allegedly requires HUD to fund the Authority's contract payments to Plaintiffs under the HAP contracts. Both Plaintiffs' complaint and the Authority's third-party complaint relate that the Authority's alleged breaches of the HAP contracts arose due to congressional amendment of the Section 8 program, in 1994 and thereafter, which amendments imposed conditions on the availability of previously "automatic" annual adjustments to rent subsidies paid to Plaintiffs. According to the Authority, a regulation issued by HUD subsequent to these amendments ("Notice H 95-12") was designed to implement the changes directed by Congress, but also "imposed additional requirements beyond those contained in existing HAP Contracts or the 1994 amendments." (Third-Party Compl. ¶ 18.) The Authority alleges that it has administered Plaintiffs' HAP contracts in accordance with Notice H 95-12 and has only adjusted rents as authorized by HUD. (Id. ¶ 19.) The Authority complains that it cannot grant Plaintiffs the relief they seek unless HUD both permits and funds the requested rent increases. (Id. ¶ 23.) The Authority alleges exposure to future contract claims by Plaintiffs and by other Maine participants in the Section 8 housing program. (Id. ¶¶ 24-25.) It

requests "clarification" of the rights and obligations existing under these interrelated Section 8 housing contracts. (Id. ¶ 26.)

The Authority asserts three counts in its third-party complaint. Count I alleges a controversy subject to judicial review under the Administrative Procedures Act. The Authority claims HUD must provide it with additional funds, if Plaintiffs are entitled to them, and that the measure of funds would be based on a correct calculation of rent adjustments under the HAP contracts. (Id. ¶ 30.)

Count II alleges a claim of "contract/indemnification," alleging that, if the Authority has breached the HAP contracts, then HUD has breached its corresponding annual adjustment contracts with the Authority. Additionally, the Authority claims that, if HUD caused it to breach the HAP contracts, then the Authority is entitled to indemnification from HUD. (Id. ¶¶ 32-33.)

Count III requests a declaratory judgment. Specifically, the Authority requests "a declaration of its rights and responsibilities in applying the 1994 amendments and Notice H 95-12 with respect to future adjustments of Contract Rents for the HAP Contracts to which it is a party, and its right to have such rent adjustments funded by HUD pursuant to the related ACCs." (Id. ¶ 35.)

The Authority's prayer for relief seeks a finding of contract breach; a declaration that regulatory action leading to the contract breach was arbitrary, capricious, an abuse of discretion, contrary to law, and/or contrary to constitutional right, in violation of the Administrative Procedures Act; an order of specific performance of contract rent adjustment provisions; a declaration of rights and responsibilities concerning the 1994 amendments and Notice H 95-12 for funding future adjustments in all HAP contracts to which the Authority is a party; an order that HUD provide additional payments to which the Authority and Section 8 housing owners are

entitled;  a declaration of contract breach respecting the annual adjustment contracts associated with Plaintiffs' properties;  a declaration that HUD has to indemnify the Authority;  and costs, fees, and other "just and proper" relief.  (Id. at 7-8.)

### DISCUSSION

HUD (Secretary Donovan) has filed a motion to dismiss the administrative claim in Count I, the declaratory judgment claim in count III, and that portion of count II that asserts a claim for indemnification.  In addition, HUD requests that the Court enter an order dismissing the portion of the count II contract claim barred by the six-year statute of limitation.  (Mot. to Dismiss Mem. at 1-3, Doc. No. 54.)  This motion raises difficult questions concerning the reach of the Administrative Procedures Act, sovereign immunity, and district court jurisdiction.

As sovereign, the United States is immune from suit unless it has consented to be sued by means of a statutory waiver of sovereign immunity.  Callahan v. United States, 426 F.3d 444, 450 (1st Cir. 2005).  Sovereign immunity extends broadly to the federal government, including federal agencies and institutions, and federal officers engaged in their official duties.  Misra v. Smithsonian Astrophysical Observatory, 248 F.3d 37, 39 (1st Cir. 2001); Coggeshall Dev. Corp. v. Diamond, 884 F.2d 1, 3 (1st Cir. 1989).  When Congress enacts a waiver of sovereign immunity, the scope of that waiver is construed strictly in favor of the United States.  Callahan, 426 F.3d at 450.  When Congress waives sovereign immunity over claims, it may restrict the means by which, and the venue in which, the claims may be presented.  Skwira v. United States, 344 F.3d 64, 72-73 (1st Cir. 2003).

Congress has not impliedly granted jurisdiction to the district courts of the United States over every claim subject to a waiver of sovereign immunity.  A party wishing to pursue a claim in a district court must identify not only a waiver of sovereign immunity, but also a delegation of

jurisdiction to the district courts.  In the context of tort claims, for example, the First Circuit has

repeatedly observed that the Federal Tort Claims Act not only waives sovereign immunity

concerning certain tort claims, but also specifically grants the district courts jurisdiction over

such claims.  Bolduc v. United States, 402 F.3d 50, 55 (1st Cir. 2005).  The third-party claims in

this case do not arise under the Federal Tort Claims Act, so the Authority must identify a waiver

and jurisdictional grant elsewhere.

According to the Authority, its claims fall under waivers found in the Administrative

Procedures Act, 5 U.S.C. § 702, and the Housing Act of 1937, 42 U.S.C. § 1404a.  (Third-Party

Compl. ¶ 3.)  As for district court jurisdiction, the Authority cites 28 U.S.C. § 1331 (federal

question jurisdiction);  28 U.S.C. § 1361 (action to compel an officer of the United States to

perform his duty);  28 U.S.C. § 2201 (declaratory judgments); and the Administrative Procedures

Act generally, 5 U.S.C. §§ 701-706.  (Id. ¶ 2.)  However, at oral argument, the Authority argued,

exclusively, that its claims should proceed under the jurisdictional grant found in section 1331,

combined with the waivers of immunity found in the APA and in the Housing Act.[2]  For reasons

---

[2]       The remedy afforded by the Declaratory Judgments Act is only available "[i]n a case of actual controversy
within [the court's] jurisdiction."  28 U.S.C. § 2201.  See Muirhead v. Mecham, 427 F.3d 14, 17 n.1 (2005) (citing
Progressive Consumers Fed. Credit Union v. United States, 79 F.3d 1228, 1230 (1st Cir. 1996)).  Consequently, the
Declaratory Judgments Act cannot serve as a justification for an exercise of jurisdiction by this Court unless the
third-party action otherwise belongs in this Court.
        As for mandamus, pursuant to 28 U.S.C. § 1361:  "The district courts shall have original jurisdiction of any
action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to
perform a duty owed to the plaintiff."  The issue, of course, is whether any of the Authority's claims is within the
proper scope of mandamus relief.  Section 1361 does not amount to a waiver of sovereign immunity by the United
States respecting claims for contract damages.  Coggeshall Dev. Corp., 884 F.2d at 3.  Nor can a party to a federal
contract use it to achieve specific performance of contract provisions.  Id. at 3-4 ("We are unaware of any waiver of
sovereign immunity by the United States as to specific performance for breach of contract.")  Finally, "mandamus
does not supersede other remedies, but rather comes into play where there is a want of such remedies."  Am. Sci &
Eng'g, 571 F.2d at 64 (quoting Carter v. Seamans, 411 F.2d 767, 773 (5th Cir. 1969)).  Although HUD challenged
the existence of any basis for mandamus relief in this case (Mot. to Dismiss Mem. at 11 n.3), the Authority made no
effort to support its citation of the federal mandamus statute.  Consequently, beyond the stumbling block presented
by these cases, the Authority has also abandoned its plea for relief under the mandamus statute.

that follow, the Court should dismiss the APA claim, but retain the contract claim and the declaratory judgment claim, subject to certain limitations on the scope of those claims.

A.    **Count I:  APA**

Pursuant to section 702 of the Administrative Procedures Act (APA):  "A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof."  5 U.S.C. § 702.  Section 702 further provides that an action "in a court of the United States seeking relief *other than money damages* . . . shall not be dismissed . . . on the ground that it is against the United States."  Id. (emphasis added).  In addition to the money damages qualifier, section 702 imposes a further condition:  "Nothing herein . . . confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought."  Id. Section 704 of the APA describes "actions reviewable" as follows:  "Agency action made reviewable by statute and final agency action *for which there is no other adequate remedy in a court* are subject to judicial review."  Id. § 704 (emphasis added).

Pursuant to these APA provisions, Congress has waived sovereign immunity with respect to judicial review of agency action for which no other adequate court remedy is available.  If the Authority's third-party action falls within this category, then the Court has broad power to compel agency action and hold unlawful actions, findings, and conclusions that are, among other things, arbitrary and capricious, unconstitutional, in excess of the agency's power, or contrary to law.  Id. § 706.  Moreover, if the third-party action falls under the APA, then the Court clearly has jurisdiction over that dispute.  Although the APA lacks an explicit or implicit jurisdictional grant to the district courts, Califano v. Sanders, 430 U.S. 99, 105 (1977) ("[T]he APA is not to be interpreted as an implied grant of subject-matter jurisdiction to review agency actions."), 28

9

U.S.C. § 1331 confers upon the district courts subject matter jurisdiction to grant "complete relief" over claims for judicial review falling within the APA's waiver of sovereign immunity. Bowen v. Massachusetts, 487 U.S. 879, 910 (1988); see also Andrus v. Charleston Stone Prods. Co., 436 U.S. 604, 607 n.6 (1978) (holding that, although the APA does not itself contain an implied grant of subject matter jurisdiction to the district courts, section 1331 "clearly conferred" jurisdiction).

According to HUD, the APA claim in the third-party complaint should be dismissed because it is really a contract claim disguised as a claim for review of agency action and an adequate remedy exists in the claim for breach of contract. (Mot. to Dismiss Mem. at 6-8.) There is First Circuit precedent pointing to this outcome, which I find persuasive for reasons that follow.

In American Science & Engineering, Inc. v. Califano, 571 F.2d 58 (1st Cir. 1978), the developer of an x-ray scanner brought suit against the Department of Health, Education and Welfare for failure to honor a licensing agreement giving the developer exclusive rights to the scanner, asserting breach of contract and *ultra vires* conduct in violation of governing regulations and seeking injunctive relief, declaratory relief, and damages. Id. at 60-61. On appeal from a preliminary injunction, the First Circuit held that the claim was not within the district court's jurisdiction because it was "essentially a contract dispute," regulatory arguments were "peripheral to the core determination of whether a breach of contract had occurred," and the requested relief was in the nature of specific performance or contract damages, meaning that the claim was within the Court of Federal Claims's "exclusive authority over contract disputes in excess of $10,000." Id. at 61. The First Circuit held that this was so despite the presence of a claim under the APA, emphasizing the language in section 704 of the APA that court review of

agency action is limited to an action "for which there is no other adequate remedy in a court" and noting that "review by the Court of Claims has consistently been held to provide an adequate remedy for an alleged breach of contract by a federal agency." Id. at 62.[3]  The First Circuit also rejected assertions of section 1331 jurisdiction because "the effect would be to undercut the exclusive jurisdiction of the Court of Claims." Id. at 63.

The Authority's third-party action against HUD is derivative of a first-party action by Plaintiffs against the Authority in which Plaintiffs assert, exclusively, contract claims.  (See Compl., Doc. No. 1.)  The Authority's third-party complaint explains the groundwork of the Section 8 housing dispute in terms of the HAP contracts it entered into with Plaintiffs and the ACC contracts it entered into with HUD.  (Third-Party Compl. ¶¶ 8-11.)  The Authority explains that HUD, by approving the Authority's execution of a HAP contract with a project owner and entering into a corresponding ACC contract with the Authority, has signified that "the faith of the United States is solemnly pledged for the payment of annual contributions to the ACC;  and that funds have been obligated by the Government for such payments to assist the [Authority] in the performance of its obligations under the HAP Contract."  (Id. ¶ 11.)  In its APA count, the Authority alleges:

> If HUD has caused MaineHousing [the Authority] to breach plaintiffs' HAP Contracts and to apply incorrect requirements and procedures to the adjustment of Contract Rents for other HAP Contracts to which MaineHousing is a party, HUD must provide any additional housing assistance payments, retroactive or prospective, to which plaintiff or other Section 8 housing owners are entitled when adjustments to the Contract Rents are calculated correctly and in conformance with applicable legal requirements.

(Id. ¶ 30.)  This allegation calls for additional payments pursuant to calculations based on "applicable legal requirements."  However, it is apparent from other allegations that the only

---

[3]  Jurisdiction over contract disputes against the United States seeking in excess of $10,000 lies in the Court of Federal Claims pursuant to the Tucker Act, 28 U.S.C. §§ 1346(a)(2), 1491.

applicable "requirements" that would produce the payments sought by the Authority (and Plaintiffs) would be the respective contracts and not any obligation set forth in the statutes governing the Section 8 program or regulations promulgated by HUD in connection with the program. With this understanding, it is plain that the Authority's plea for relief entails a request for contract damages (an order "to provide any additional housing assistance payments" based on a proper calculation of contract rents), specific performance (an order that HUD "shall perform, and/or allow [the Authority] to perform, future adjustments of the Contract Rents" as called for in the HAP contracts) and a declaration concerning the determination and funding of future contract rents based on contract provisions rather than the countervailing provisions of federal law and agency rule. (Id. at 7.)

The Authority's APA claim presents a contract dispute, in essence, and because this is so, judicial review under the APA is not appropriate because another adequate remedy exists in the form of a third-party contract claim against HUD and/or the United States.[4] This is the holding of American Science & Engineering, Inc. v. Califano, *supra*, which is binding authority in this Circuit. Assuming the Court has jurisdiction to enter a binding judgment on count II of the third-party complaint, that will be an adequate remedy in the context of this case. If that contract claim against HUD is somehow inadequate, or if that claim does not belong in this Court, then an

---

[4]    The theoretical distinction between a claim against HUD, on the one hand, and a claim against the United States, on the other, is explored in connection with the discussion of Count II. It is premised on the idea that the sue-and-be-sued waiver found in section 1404a of the Housing Act is limited to specific appropriations and non-appropriated funds already in HUD's exclusive control, so that a claim arising under that waiver does not generate any exposure for the United States treasury. This distinction is a difficult one for me to grasp, but the parties cite abundant authority that acknowledges the distinction.

adequate remedy still exists in the form of a contract claim that can be pursued against the

United States in the Court of Federal Claims under its Tucker Act jurisdiction.[5]

The Authority argues that the persuasive force of <u>American Science & Engineering</u> is

curtailed by <u>Bowen v. Massachusetts</u>, 487 U.S. 879 (1988). The Authority contends that it has

more than a mere contract claim because it complains of HUD Notice H 95-12, which forced the

Authority to breach Plaintiffs' HAP contracts. Because its alleged contract breaches flowed

from final agency action undertaken by HUD, the Authority says it has a proper APA claim.

(Opp'n Mem. at 10.) The Authority cites <u>Bowen v. Massachusetts</u> in support of its position. In

the Authority's view, this Supreme Court opinion counters the First Circuit's holding in

<u>American Science & Engineering</u>, at least in the context of the Section 8 housing program.

Discussion of <u>Bowen v. Massachusetts</u> entails discussion of the First Circuit opinion reviewed

therein.

In <u>Massachusetts v. Secretary of Health and Human Servs.</u>, 816 F.2d 796 (1st Cir. 1987),

the First Circuit considered an APA claim by the State of Massachusetts for judicial review of a

decision by the Secretary that classified certain services as excluded from reimbursement under

---

[5]     At oral argument, the Authority argued that the Court of Federal Claims would not provide it with an adequate remedy *at this time* because the first-party action has not been reduced to judgment in favor of the Plaintiffs. I am not persuaded that the contingent or derivative nature of the third-party action would prevent the Authority from obtaining adequate relief in the Court of Federal Claims in the event that the Plaintiffs obtained judgment in this Court against the Authority. The Authority also argued orally that the recent decision in <u>United States v. Tohono O'odham Nation</u>, 131 S. Ct. 1723 (2011) (addressing 28 U.S.C. § 1500), reveals that it has no ability to pursue a claim in the Court of Federal Claims while this claim is pending. However, the Authority had an election as to where and when to commence its contract claim, an election related to whether it wanted to sue HUD under the section 1404a limited waiver, discussed in the context of count II, or the United States under the Tucker Act waiver. The Authority has not argued that its third-party contract claim against HUD under the section 1404a waiver would be inadequate. Should the Court exercise jurisdiction over count II, that contract claim presumably offers an adequate remedy in the form of contract damages. If HUD's available funds are insufficient, the Authority has failed to articulate what greater remedy it would be entitled to under the APA that could not be achieved through its contract claim, or potentially through a subsequent proceeding against the United States in the Court of Federal Claims. <u>Id.</u> at 1731. Theoretical shortfalls in the monetary recovery arising from limited waivers or the Anti-Deficiency Act (all beyond the scope of the present motion) are how the sovereign immunity cookie crumbles. <u>See id.</u>

the Medicaid Act.  Id. at 798.  The Secretary disallowed the state's claim for reimbursement and the state appealed the disallowance through administrative channels.  Id.  The district court that reviewed the matter concluded that the classification decision was erroneous and ordered reimbursement of the state's expenditures.  Id. at 798-99.  On appeal, the First Circuit held that any monetary reimbursement remedy "for money past due" amounted to "money damages" and was therefore within the exclusive jurisdiction of the Claims Court to award.  Id. at 800.  In effect, the district court's determination on the merits of the administrative question would stand, but the plaintiff would have to file suit in the Claims Court should the Secretary refuse to pay.  Id.  On further appeal, the Supreme Court vacated this holding and held that the claim for reimbursement was not in the nature of a claim for "money damages" and therefore was not in the exclusive jurisdiction of the Claims Court.  According to the Supreme Court, the claim was not for money damages because the disallowance decision would result in an adjustment in the size of a federal grant payable in quarterly installments, not "damages" per se.  Bowen v. Massachusetts, 487 U.S. at 893.  Judicial review in this context would entail declaratory and injunctive relief requiring modification of future practices for which "a naked money judgment" would not necessarily suffice.  Id. at 904.  Maintenance of the ongoing relationship between a state and the federal government with respect to administration of an entitlement program was something beyond the narrow focus of the Claims Court.  Id. at 906-907.  The Court observed that disputes arising from the Medicaid program, in particular, would raise state law concerns that the district courts would be better prepared to address.  Id. at 907-908.  The core teaching of Bowen v. Massachusetts is that, where the agency action is appropriately reviewed under the APA, the district court may afford "complete relief," including monetary relief that flows from the relief otherwise available under section 706 of the APA.

The Bowen v. Massachusetts opinion is filled with cautionary language calling for an expansive assessment of the scope of district court review of agency action under the APA, as compared with the narrow scope of Claims Court jurisdiction. However, central to the Court's holding that monetary relief was appropriate under the APA was the fact that any resulting payment would be "a mere by-product of [the district] court's primary function of reviewing the Secretary's interpretation of federal law." Id. at 909-910. The Supreme Court observed that a contrary approach would unproductively split the case into two parts, something not called for by the APA. Id. at 911. The instant case and Bowen v. Massachusetts part company when it comes to identifying an underlying administrative interpretation of federal law.

The underlying claim advanced by Plaintiffs in this case is a claim to enforce a contract, and recover contract damages, not a claim for review of an administrative claims decision. Additionally, the administrative action challenged in this case is action *in compliance with* federal statutory law. As alleged in both the underlying complaint and the third-party complaint, Congress amended the Section 8 program in 1994. Future congressional action between 1994 and 1999 made these amendments permanent. Meanwhile, HUD issued the 1995 Notice describing how it would implement the new parameters set by Congress on annual rent adjustments. (Compl. ¶¶ 16-20; Third-Party Compl. ¶¶ 17-18.) No allegation suggests that HUD's administrative action has not complied with or is inconsistent with the amendments. As alleged, federal law does not call for the rejection of HUD's administrative action, preexisting contract language does. Parenthetically, Plaintiffs commenced this action on contract claims

more than a decade after HUD's issuance of Notice 95-12. There is no underlying administrative proceeding for the Court to review.[6]

The APA waives sovereign immunity for claims against the United States concerning final agency action and seeking relief other than money damages. The question arises whether a contract claim for breach of an alleged obligation to annually increase rents amounts to a claim for money damages or a claim for specific relief. In the context of a contract dispute over monetary contributions, attempting to explain the distinction between damages and specific relief is not a very rewarding exercise. However, <u>Bowen v. Massachusetts</u> holds that the difference is determined by asking whether the claim seeks specific relief in the form of enforcement of a statute or regulation, on the one hand, or seeks "money in compensation for the damage sustained by the failure of the Federal Government to pay as mandated," on the other hand. 487 U.S. at 900. Given this distinction, the contract claims in this case, and the derivative third-party claims, do not fall into the former category (the APA category). They do fall into the latter category insofar as payment is allegedly mandated by contract.[7]

---

[6]     At oral argument, the Authority suggested that HUD was not required to calculate rent adjustments in accordance with the amendments, and could have used its own funding sources to continue funding automatic annual increases. Even if HUD could have proceeded in that fashion, it does not follow that the alleged breach was administrative action in contravention of federal law, rather than in violation of contract.

[7]     There is room to quibble about whether the Authority's claim seeks "damages." Perhaps damages is not a term ideally suited to a claim seeking performance of a contract calling for annual increases in contract payments. However, even though the APA applies to claims for relief other than "money damages," courts have still routed contract claims to the Court of Federal Claims based on the idea that the Tucker Act impliedly forbids contract claims from proceeding as claims for judicial review under the APA, at least to the extent that the claimant is not advancing a regulatory question or statutory right. <u>Normandy Apts., Ltd. v. United States HUD</u>, 554 F.3d 1290, 1295-96 (10th Cir. 2009); <u>Suburban Mortg. Assocs. v. United States HUD</u>, 480 F.3d 1116, 1120, 1124-25, 1128 (Fed. Cir. 2007).

     The Court of Appeals for the Federal Circuit has described the initial emphasis on whether a claim involving monetary relief is for money damages as "a distinction that is at best murky, and at worst without a difference." <u>Suburban Mortg. Assocs.</u>, 480 F.3d at 1124-25. It therefore counsels that the inquiry begin with the question of whether an adequate remedy exists in the Court of Federal Claims under the Tucker Act. <u>Id.</u> at 1125-26. If the answer is yes, then the APA claim should be dismissed.

In the context of this case, the contracts in question are the source of the alleged right to automatic rent increases rather than any statute or regulation mandating performance. Consequently, when these claims are advanced against HUD they are appropriately pursued as breach of contract claims rather than as APA claims for judicial review of agency action.  See Suburban Mortg. Assocs. v. United States HUD, 480 F.3d 1116, 1125 (Fed. Cir. 2007) (holding, in the context of an attempt by a mortgage lender to proceed against HUD for performance of a loan guarantee, that claims of this kind are properly dismissed under the APA pursuant to the 5 U.S.C. § 704 inquiry concerning an adequate remedy existing elsewhere (in the Court of Federal Claims), and discussing Bowen v. Massachusetts at length);  see also United States v. Park Place Assocs., 563 F.3d 907, 931 (9th Cir. 2009) (expressing "no doubt that a suit seeking specific performance of a contract is a 'contractually' based claim for purposes of the APA and the Tucker Act" in the context of a claim to confirm an arbitration award entered on a contract dispute);  Normandy Apts., Ltd. v. United States HUD, 554 F.3d 1290 (10th Cir. 2009) (holding that claim for review of HUD decision to terminate contract with housing provider fell under the APA because it challenged a termination decision that was based on an administrative finding that the housing project was unsafe and unsanitary, but otherwise agreeing with the district court that a second claim for specific performance of a contract was not within the district court's APA jurisdiction);  Village West Assocs. v. Rhode Island Hous. & Mortg. Fin. Corp., 618 F. Supp. 2d 134, 139, 142 (D. R.I. 2009) (rejecting APA claim in precisely this same scenario);  Cathedral Square Partners L.P. v. S.D. Hous. Dev. Auth., 679 F. Supp. 2d 1034, 1040-44 (D. S.D. 2009) (same, distinguishing Bowen v. Massachusetts at some length).[8]

---

[8]     Cuyahoga Metropolitan Housing Authority v. United States, 57 Fed. Cl. 751 (Fed. Cl. 2003), is persuasive authority for the proposition that adequate relief is available in the Court of Federal Claims for the precise kind of contract claims involved in this case, though claims court jurisdiction in that case did not arise in the context of a

The Authority argues that the Federal Circuit has held that claims of this kind do not belong in the Court of Federal Claims, citing Katz v. Cisneros, 16 F.3d 1204 (Fed. Cir. 1994). (Opp'n Mem. at 12.)  However, in terms of Federal Circuit precedent, Suburban Mortgage Associates, cited above, is the more persuasive federal circuit authority on the APA issue in this case, even though it did not involve a claim by a housing project owner, as did Katz.  In Katz, a project developer sued HUD based on HUD's interpretation of regulations governing the calculation of contract rents following an audit of the developer's project and administrative appeals.  Katz, 16 F.3d at 1206.  The Federal Circuit held that the district court had general federal question jurisdiction under section 1331, and that the APA waived sovereign immunity because the essence of the suit was one for equitable and declaratory relief to compel HUD to calculate contract rents *in accordance with regulations*.  Id. at 1208 (concluding that the facts were essentially indistinguishable from those in Bowen v. Massachusetts because the suit required judicial interpretation of a federal regulation to enforce a claim of right arising under that regulation).  Katz, in other words, presented the mirror image of the claim at issue here;  a claim seemingly alike, but reversed in terms of whether the claim of right proceeded from contract or regulation.[9]

---

third-party action.  In its final footnote, the Authority cites this decision as having "great weight with respect to an APA review of the very same action by HUD in the case before this court," (Opp'n Mem. at 13 n.10), but the adequacy of that disposition on a claim under the Tucker Act would undermine review under the APA pursuant to 5 U.S.C. § 704.

[9]      The Authority also cites Foxglenn Investors Limited Partnership v. Housing Authority, 844 F. Supp. 1078 (D. Md. 1993), a case involving section 8 "rent rollbacks" that occurred prior to 1994, in which the district court found APA jurisdiction and mandamus jurisdiction.  Id. at 1084 (citing Terrace Housing Assocs., Ltd v. Kemp, No. CIV 92-786-T, 1992 U.S. Dist. lexis 18884 (W.D. Okla. June 10, 1992)).  Foxglenn and Terrace Housing are distinguishable because they involved a violation of federal regulations or enforcement of a regulatory scheme that was contrary to the statutory scheme.

Pursuant to <u>Suburban Mortgage Associates</u>, <u>American Science & Engineering</u>, and the other precedent discussed above, the Authority's attempt to assert a claim under the APA is undermined by the fact that the dispute is by nature a contract dispute for which adequate relief exists in the form of a contract claim. Even if such a contract claim cannot be pursued in this Court, it can be pursued before the Court of Federal Claims, pursuant to the Tucker Act,[10] and a contract remedy in that venue is an adequate remedy. Accordingly, I recommend that the Court grant HUD's motion to dismiss, to the extent it requests dismissal of the APA claim found in count I of the third-party complaint.

## B.    Count II:  Breach of Contract

In count II of the third-party complaint, the Authority asserts a claim captioned "Contract/Indemnification." The Authority maintains: "If HUD has caused [the Authority] to breach its Section 8 HAP Contract with plaintiffs, HUD has breached the related ACC with [the Authority]." (Third-Party Compl. ¶ 32.) Additionally, the Authority alleges: "If HUD has caused [the Authority] to breach its Section 8 HAP Contract with plaintiffs, [the Authority] is

---

[10]      Title 28 U.S.C. § 1491(a)(1) ("Claims against the United States generally"), also known as the "Tucker Act," provides:

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

Although written in jurisdictional language rather than waiver language, the Supreme Court has held that the Tucker Act impliedly waives sovereign immunity for nontort claims seeking money damages where the claimant demonstrates that another source of substantive law mandates compensation for the damages sustained. <u>United States v. Mitchell</u>, 463 U.S. 206, 212, 216-218 (1983). <u>See also</u> <u>Charles v. Rice</u>, 28 F.3d 1312, 1321 (1st Cir. 1994) ("Under the Tucker Act, . . . the United States waived its sovereign immunity from nontort claims for money damages and specified which courts could hear such claims."). If such a claim seeks damages in excess of $10,000, then jurisdiction lies in the Court of Federal Claims; concurrent jurisdiction exists in the district courts only if the claim does not exceed $10,000. 28 U.S.C. § 1346(a)(2) ("Little Tucker Act"). For claims against the United States seeking more than $10,000, the jurisdiction of the Court of Federal Claims is "exclusive" and "the Claims Court retains its 'exclusive' jurisdiction . . . in the absence of an express grant of jurisdiction and waiver of sovereign immunity designating an alternative forum for adjudication of claims traditionally belonging in the Claims Court." <u>Massachusetts v. Dep't Grant Appeals Bd.</u>, 815 F.2d 778, 785 (1st Cir. 1987) (discussing the Court of Federal Claims's Tucker Act jurisdiction at some length).

19

entitled to indemnification by HUD for all costs and expenses it has sustained or will sustain to remedy those breaches." (Id. ¶ 33.) HUD requests partial, but not complete, dismissal of this claim. According to HUD, the claim for indemnification should be dismissed on the ground that "a duty to indemnify against third-party claims cannot be implied against the United States." (Mot. to Dismiss Mem. at 15.) Additionally, HUD asks the Court to dismiss that portion of the contract claim that reaches beyond the six-year statute of limitation. (Id. at 13-14.)

HUD's request that the Court dismiss a portion of count II calls upon the Court to exercise jurisdiction over that count. The Tucker Act provides that contract claims against the United States are within the jurisdiction of the Court of Federal Claims and the Little Tucker Act only creates concurrent jurisdiction in the district courts when such claims do not exceed $10,000 in amount. 28 U.S.C. §§ 1346(a)(2), 1491(a)(1). In its primary memorandum, HUD asserts that the claim against Secretary Donovan is really a claim against the United States (Mot. to Dismiss Mem. at 9 & n.4), and some of the authorities cited in support of HUD's motion to dismiss the APA claim have found that a district court lacks subject matter jurisdiction over third-party contract claims against HUD because such a claim falls within the exclusive jurisdiction of the Court of Federal Claims. See, e.g., Portsmouth Redevelopment & Hous. Auth. v. Pierce, 706 F.2d 471, 474-75 (4th Cir. 1983); Village West Assocs., 618 F. Supp. 2d at 140-41 & n.11; Cathedral Square Partners L.P., 679 F. Supp. 2d at 1040-44. Despite these representations and citations, HUD's motion seeks only partial dismissal of the third-party contract claim, implicitly suggesting that this Court can exercise jurisdiction over that claim, notwithstanding HUD's own assertion that the claim is against the United States.

Meanwhile, in its opposition memorandum, the Authority argues that exclusive jurisdiction in the Court of Federal Claims does not arise because the third-party contract claim

is not really against the United States, but against "Secretary Donovan as an agent of HUD." (Opp'n Mem. at 5-6.)  According to the Authority, it may elect to restrict its claim against the Secretary to a claim under the sue-and-be-sued waiver in the Housing Act, which claim could be satisfied from leftover appropriated funds and funds from other sources within HUD's exclusive control, rather than general treasury funds, meaning that the claim is not being asserted "against the United States" for purposes of the Tucker Act.  (Id. at 6-8.)  In effect, the Authority has briefed the issue of subject matter jurisdiction over a contract claim against HUD, even though HUD has not asked that the contract claim be dismissed for lack of jurisdiction.  It was due to this jurisdictional quandary that I scheduled oral argument.

At oral argument, HUD backed the Authority's proposition that this Court can exercise jurisdiction over the contract claim, provided that it is understood that the claim under the section 1404a waiver is limited to a claim against HUD targeting existing appropriations, which HUD also described as prior annual contributions, to the extent monies remain available to satisfy the claim.  HUD's counsel conceded that the Secretary has advanced contrary arguments in other cases and represented that HUD is itself "wrestling with the issue."  For legal authority, the Authority and HUD both rely on Federal Housing Authority v. Burr, 309 U.S. 242 (1940).

In FHA v. Burr, the Supreme Court considered whether FHA was immune from civil process arising from state garnishment law.  Id. at 243-44.  The Court held that the garnishment proceeding was appropriate in light of the fact that Congress had grafted a sue-and-be-sued waiver on the National Housing Act, and such waivers "should be liberally construed."  Id. at 244-245.  Justice Douglas explained as follows:

> [W]hen Congress establishes such an agency, authorizes it to engage in commercial and business transactions with the public, and permits it to "sue and be sued," it cannot be lightly assumed that restrictions on that authority are to be

implied.  Rather if the general authority to "sue and be sued" is to be delimited by implied exceptions, it must be clearly shown that certain types of suits are not consistent with the statutory or constitutional scheme, that an implied restriction of the general authority is necessary to avoid grave interference with the performance of a governmental function, or that for other reasons it was plainly the purpose of Congress to use the "sue and be sued" clause in a narrow sense.  In the absence of such showing, it must be presumed that when Congress launched a governmental agency into the commercial world and endowed it with authority to "sue or be sued," that agency is not less amenable to judicial process than a private enterprise under like circumstances would be.

Id. at 245 (footnote omitted).  Given the breadth of the sue-and-be-sued waiver, the Supreme Court concluded that garnishment proceedings associated with FHA's officers and employees could proceed against the FHA like any other kind of suit associated with "carrying out the provisions" of the Act.  Id. at 245-48.

The waiver at issue in FHA v. Burr stated:  "The Administrator shall, in carrying out the provisions of this title and titles II and III, be authorized, in his official capacity, to sue and be sued *in any court of competent jurisdiction, State or Federal*."  309 U.S. at 244 (emphasis added).  Here, the waiver provides:  "The Secretary of Housing and Urban Development may sue and be sued only with respect to its functions under the United States Housing Act of 1937, as amended, and title II of Public Law 671, Seventy-sixth Congress, approved June 28, 1940, as amended."  42 U.S.C. § 1404a.  The only distinction is that the section 1404a waiver does not expressly state that the Secretary or HUD may be sued "in any court of competent jurisdiction," though the Authority argues that such a phrase is implied, particularly as such waivers are to be liberally construed.  I agree with the Authority that the omitted language is implied and that, even if the language were contained in section 1404a, the Court would still have to evaluate whether it has jurisdiction over the claim in question.  The ultimate question is whether there is such a thing as a claim against HUD that is not also a claim "against the United States" for

purposes of the Tucker Act. <u>FHA v. Burr</u> is binding Supreme Court authority for the proposition

that a claim against a federal agency under a sue-and-be-sued waiver, coupled with a funding

limitation, can proceed without implicating the full faith and credit of the United States Treasury.

Consequently, I conclude that the impliedly exclusive jurisdiction of the Court of Federal Claims

under the Tucker Act does not override the jurisdictional footholds supplied by sections 1331

and 1367, despite the contractual nature of the third-party action.

As for the source of funds to pay the claim, the Supreme Court observed that FHA had

retained pay owed to the garnisheed employee, <u>id.</u> at 243-44, and that Congress had made it plain

that claims against FHA could only be paid from funds made available under the Act, <u>id.</u> at 250.

Consequently: "only those funds which have been paid over to the Federal Housing

Administration in accordance with [the Act] and which are in its possession, severed from

Treasury funds and Treasury control, are subject to execution." <u>Id.</u> Whether execution might

latter be achieved, if the funds were on deposit with the Treasurer of the United States, was not

germane to the question of waiver and jurisdiction. <u>FHA v. Burr</u>, 309 U.S. at 251 ("The fact that

execution may prove futile is one of the notorious incidents of litigation, as is the fact that

execution is not an indispensable adjunct of the judicial process."). According to <u>FHA v. Burr</u>,

in other words, the question of whether agency funds exist to satisfy a claim is not part of the

jurisdictional analysis associated with sue-and-be-sued waivers. For this reason, this Court has

jurisdiction to render a judgment against (or in favor of) HUD on the Authority's third-party

contract claim.[11]

---

[11]    For additional cases involving limited waivers based on sue-and-be-sued provisions, some relying on removal jurisdiction under 28 U.S.C. § 1442(a)(1), see <u>Falls Riverway Realty, Inc. v. Niagara Falls</u>, 754 F.2d 49, 55-56 & n.5 (2d Cir. 1985); <u>S.S. Silberblatt, Inc., v. East Harlem Pilot Block</u>, 608 F.2d 28, 35-36 (2d Cir. 1979); <u>Marcus Garvey Square, Inc. v. Winston Burnett Constr. Co.</u>, 595 F.2d 1126, 1131 (9th Cir. 1979); <u>Bor-Son Bldg. Corp. v. Heller</u>, 572 F.2d 174, 179-82 (8th Cir. 1978); <u>C.D. Barnes Assocs. v. Grand Haven Hideaway Ltd. P'ship</u>,

Based on the reasoning set forth in <u>FHA v. Burr</u> and the sue-and-be-sued waiver contained in section 1404a of the National Housing Act of 1937, the Secretary in his official capacity and HUD are amenable to suit on a contract claim "with respect to [HUD's] functions under the United States Housing Act of 1937." 42 U.S.C. § 1404a. This case clearly concerns HUD's functions under the Housing Act. Therefore, unless it is "clearly shown that [a third-party contract suit is] not consistent with the statutory or constitutional scheme," or "that an implied restriction of the general [sue-and-be-sued] authority is necessary to avoid grave interference with the performance of a governmental function,"[12] <u>FHA v. Burr</u>, 309 U.S. at 245, suit can proceed against HUD in this Court, on the third-party action, based either on the Court's original jurisdiction over civil actions arising under the laws of the United States, 28 U.S.C. § 1331,[13] or its "supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution," including "claims that involve the joinder . . . of additional parties," 28 U.S.C. § 1367(a).[14] Assuming such a suit is proper, HUD's liability is necessarily

---

406 F. Supp. 2d 801, 814-18 (W.D. Mich. 2005); <u>Jackson Square Assocs. v. United States HUD</u>, 797 F. Supp. 242, 243-46 (W.D.N.Y. 1992); <u>FHM Constructors, Inc. v. Canton Hous. Auth.</u>, 779 F. Supp. 677, 681 (N.D.N.Y. 1992); <u>Terrace Hous. Assoc., Ltd. v. Kemp</u>, No. CIV 92-786-T, 1992 U.S. Dist. Lexis 18884, *17-18 (W.D. Okla. June 10, 1992).

[12]     The parties have not briefed or argued the question of whether this approach to contract claims against HUD might give rise to "grave interference with the performance of a governmental function." <u>FHA v. Burr</u>, 309 U.S. at 245. Presumably, HUD would be in the best position to identify the potential for significant interference with its functions, if a danger were present. As for being consistent with the statutory scheme, presumably the Supreme Court meant the statutory scheme applicable to the functioning of the agency and not the jurisdictional statutory scheme of the Tucker Act and Little Tucker Act.

[13]     The Authority cites <u>Lopez v. Arraras</u>, 606 F.2d 347, 349, 353 (1st Cir. 1979), as "analogous" circuit precedent recognizing section 1331 jurisdiction would exist in the context of a third-party action against HUD. (Opp'n Mem. at 6-7.) I am not persuaded that <u>Lopez</u> involved a claim that would be potentially subject to exclusive jurisdiction in the Court of Federal Claims. Consequently, I have not cited <u>Lopez</u> as binding authority on the question of section 1331 jurisdiction over a third-party contract claim against HUD.

[14]     Note that the Authority did not cite the supplemental jurisdiction statute.

restricted to funds in HUD's exclusive control, as the limited waiver of section 1404a does not apply against the United States. With this jurisdictional groundwork in place, a groundwork advocated by both parties, the discussion turns to HUD's arguments for partial dismissal of the contract claim in count II.[15]

### 1. Contract indemnification

Although HUD concedes that it is amenable to suit in this Court on a third-party contract claim under the sue-and-be-sued waiver, HUD nevertheless insists that the contract claim cannot proceed under a theory of indemnification "because a duty to indemnify cannot be implied against the United States." (Mot. to Dismiss Mem. at 15.) The question of what amounts to a claim "against the United States" is, once again, blurred. As was just discussed, the contract claim proceeding in this Court is necessarily limited to the sue-and-be-sued waiver of the Housing Act and does not reach the United States Treasury. As part of its requested remedy, the Authority requests "indemnification by HUD for all costs and expenses it has sustained or will sustain to remedy [the] breaches." (Third-Party Compl. ¶ 33.)

---

[15] For contrary authority, see Portsmouth Redevelopment & Hous. Auth., 706 F.2d at 475 (4th Cir. 1983) (holding that suit could not be maintained in district court and distinguishing a prior case where jurisdiction in district court was found under "sue and be sued" clause of 12 U.S.C. § 1702 because 42 U.S.C. § 1404a does not include language that permitted agency to "sue and be sued" *in any court of competent jurisdiction*). See also id. at 473 ("There is no 'separate fund' for the payment of operating subsidies within HUD's exclusive control, 'the *origin* of which [is] not the public treasury.'") (citations omitted) (emphasis added); United States v. Adams, 634 F.2d 1261, 1265-66 (10th Cir. 1980) (suggesting that the waiver set out in section 1404a would only apply for failure to pay monies actually allocated for a specific project); A. L. Rowan & Son, Gen. Contractors, Inc. v. Dep't of Hous. and Urban Dev., 611 F.2d 997, 998-1001 (5th Cir. 1980) (describing the jurisdictional issue as "an enigma," finding that the section 1404a waiver and section 1331 would not apply to a contract claim in excess of $10,000, but—paradoxically—might apply to an unjust enrichment theory, and mandating transfer to the Court of Federal Claims); Housing Prods. Co. v. Flint Hous. Comm'n, No. 99-1551, 2000 U.S. App. Lexis 29146, *6-9, 2000 WL 1720612, *2-3 (6th Cir. Nov. 7, 2000) (not for publ'n) (discussing split of authority, agreeing with Fourth Circuit, and citing 42 U.S.C. § 1437c(c)(3) to demonstrate potential exposure of the U.S. Treasury); Vill. W. Assocs., 618 F. Supp. 2d at 140-41 & n.11 (D. R.I. 2009) (declining "to delve into" whether the section 1404a waiver changes the outcome on the ground that the action "belongs in the Claims Court" and the "'source of funds' debate" may be "a circular and illogical judicial fiat," and dismissing third-party action against HUD "for refiling at the appropriate time in the Court of Federal Claims"); Cathedral Square Partners L.P., 679 F. Supp. 2d at 1040-44 (finding section 1404a waiver inapplicable by construing claim as inherently against the United States); Carlyle Gardens Co. v. Delaware State Hous. Auth., 659 F. Supp. 1300, 1305-1307 (D. Del. 1987) (same).

The case authority cited by HUD, <u>Hercules, Inc. v. United States</u>, 516 U.S. 417 (1996), was decided at the summary judgment stage in the trial court. <u>Id.</u> at 421. On appeal, the Supreme Court addressed the duty to indemnify *under the Tucker Act waiver*, not a sue-and-be-sued waiver restricted to agency funds.[16] <u>Id.</u> at 422-23. If the Authority could identify substantive law imposing a duty to indemnify implied in law or in fact, based on plausible inferences drawn from its allegations, that would be enough to forestall dismissal of this portion of the contract claim. However, as the Supreme Court observed in its <u>Hercules</u> opinion, the Anti-Deficiencies Act, 31 U.S.C. § 1341, "bars a federal employee or agency from entering into a contract for future payment of money in advance of, or in excess of, an existing appropriation." <u>Id.</u> at 427.

The Authority's response on this issue is not persuasive. In fact, the Authority's opposition memorandum does not mention the <u>Hercules</u> decision or contain the word indemnification, which would warrant treating the claim as waived. At oral argument, counsel for the Authority suggested that a duty to indemnify against costs and expenses might be inferred in fact from language in section 1.4 of the annual contributions contracts indicating the creation of a fund.[17] Counsel for HUD responded that there are no appropriations for such expenses under the Section 8 Program.

The Authority's failure to brief this issue is reason enough to dismiss the request for indemnification of costs and expenses. Additionally, nothing in its oral presentation, let alone

---

[16]     Even in the context of a Tucker Act claim against the United States, the Supreme Court noted that a duty to indemnify can be demonstrated based on an agreement to indemnify that is *implied in fact*. <u>Hercules, Inc.</u>, 516 U.S. at 423-24.

[17]     There are annual contributions contracts on the docket in this proceeding at docket entry 14, exhibits F, H, I, J, and K. Counsel for the Authority invites the Court to consider the language of these agreements, but there is no need as the language is not incorporated into the third-party complaint and HUD has not itself sought to introduce extraneous exhibits in support of its motion.

the factual allegations in the third-party complaint, describes a plausible basis for inferring that

HUD assumed a duty to indemnify the Authority for the costs and expenses of defending the

first-party action or pursuing the third-party action, either as implied by law or by the factual

circumstances.[18]  For these reasons, I recommend that the Court grant HUD's request and

dismiss the indemnification claim in count II, leaving the claim for breach of contract.

### 2. *Statute of limitations*

HUD requests an order dismissing that portion of the third-party contract claim which

reaches behind the six-year statute of limitations.  (Mot. to Dismiss Mem. at 13-14.)  That

limitation period is appropriate here, as the state law limitation period of six years, 14 M.R.S. §

752, corresponds with the six-year limitation period applied by the Court of Federal claims in the

context of analogous contract claims against the federal government, Brown Park Estates-

Fairfield Dev. Co. v. United States, 34 Fed. Cl. 464, 466-67 (1995) (citing 28 U.S.C. § 2501).

State law presumably applies in the context of the sue-and-be-sued waiver, but it requires no

extended analysis as the Authority fails to advocate for a longer period and appears willing to

concede the point.

The Authority's opposition memorandum is silent on the issue and the Authority's oral

presentation did not include an argument that six years is not the appropriate limitation period.

The Authority presumably has no objection to HUD's assertion that the limitation period is

measured from the filing of the third-party complaint rather than some earlier notice of claim or

that "HUD's liability is limited to breaches that allegedly occurred from December 22, 2004

---

[18]      In Rick's Mushroom Service, Inc. v. United States, 521 F.3d 1338 (Fed. Cir. 2008), the Federal Circuit
affirmed dismissal of an indemnification claim, explaining that the Anti-Deficiencies Act would prevent an
inference that an agency had agreed to indemnify a contracting party in the absence of statutory authority or an
appropriation for that specific purpose. Id. at 1346.

through December 22, 2010."[19]  (Mot. to Dismiss Mem. at 14.)  I recommend that the Court simply dismiss the contract claims to the extent they purport to reach beyond the six-year statute of limitation and leave it at that for present purposes.

### C.  Count III:  Declaratory Judgments Act

HUD argues that the Declaratory Judgments Act claim in count III must be dismissed because it is fraught with separation of powers concerns.  According to HUD, what count III is really after is "an impermissible order that HUD specifically perform the ACCs" (annual contribution contracts), which would amount to a de facto injunction against the Executive Branch.  (Mot. to Dismiss Mem. at 10-11.)  HUD also complains that the claim for declaratory relief requests a declaration respecting other contracts and other housing projects than those involved in the instant litigation.  (Id. at 12.)  At oral argument, the Authority conceded that the claim should be dismissed to the extent it requests relief concerning other contracts with non-parties.  However, the Authority does not want to relinquish the count in any other respects.  In its written opposition brief, the Authority couches its discussion of declaratory relief in terms of the APA claim in count I.  Should the Court adopt the recommendation on the APA count, count I would no longer afford a basis for declaratory relief in the context of this proceeding.

As for count III, the Declaratory Judgments Act empowers "any court of the United States," except in certain specified proceedings not at issue here, to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201.  When it comes to claims against the federal government,

---

[19]     There is slightly more than a one-year gap between the filing of Plaintiffs' complaint and the filing of the Authority's third-party complaint.  The Authority's memorandum speaks of "Prospect Manor" and "Longfellow Place" (Mot. to Dismiss Mem. at 14), but these references are to housing projects involved in the parallel litigation of Mack Brothers v. Maine State Housing Authority, No. 2:10-CV-00087-GZS.  Presumably, HUD failed to edit a motion to dismiss draft first prepared for filing in the Mack Brothers case.

this remedial provision is neither a waiver statute nor a subject matter jurisdiction statute.  The remedy it affords is only available "[i]n a case of actual controversy within [the court's] jurisdiction."  Id.  See Muirhead v. Mecham, 427 F.3d 14, 17 n.1 (2005);  Progressive Consumers Fed. Credit Union v. United States, 79 F.3d 1228, 1230 (1st Cir. 1996).  Assuming the Court adopts the recommendation that it dismiss the APA claim in count I and exercise jurisdiction over the contract claim in count II[20] based on the limited waiver of section 1404a, then the limited waiver would also permit a plea for declaratory relief and the contract dispute would provide the jurisdictional grounding for the Declaratory Judgments Act claim.  Nevertheless, the Court should dismiss the plea for declaratory relief as to what HUD "shall" do in the future.[21]  See Coggeshall Dev. Corp., 884 F.2d at 3 (explaining that a claim to compel government action is properly regarded as seeking relief from the sovereign and that "federal courts do not have the power to order specific performance by the United States of its alleged contractual obligations").  Beyond this, the Court should defer judgment on the scope of any declaratory remedy.  The Court may declare the respective rights of the parties without issuing any "coercive relief" against HUD, Powell v. McCormack, 395 U.S. 486, 517-18 (1969), so HUD's argument does not call for wholesale dismissal of count III.

---

[20]     If the Court concludes that it lacks jurisdiction over the third-party action and should transfer the entire case to the Court of Federal Claims or dismiss the third-party contract claim without prejudice, then it would be appropriate to dismiss count III with prejudice at that time, as a declaratory judgment remedy has no future in the Court of Federal Claims as an independent count.  United States v. King, 395 U.S. 1, 5 (1969);  Acceptance Ins. Cos. v. United States, 503 F.3d 1328, 1338 (Fed. Cir. 2007) (explaining that the Tucker Act contains its own limitation on the extent of non-monetary relief available in the Court of Federal Claims).

[21]     In paragraph C of its plea for relief, the Authority requests an "[o]rder that HUD shall perform, and/or allow MaineHousing to perform, future adjustments of the Contract Rents for HAP Contracts to which MaineHousing is a party in accordance with applicable legal requirements[.]" (Third-Party Compl. at 7.)

**D.      Right to Trial By Jury**

HUD argues that this third-party contract dispute cannot be tried to a jury because the Seventh Amendment only applies to common law suits, not to actions against the federal government.  It cites <u>Lehman v. Nakshian</u>, 453 U.S. 156, 160 (1981) ("It has long been settled that the Seventh Amendment right to trial by jury does not apply in actions against the Federal Government.")  (Mot. to Dismiss Mem. at 17.)  The Authority has not raised any objection.  I therefore recommend that the Court strike the Authority's request for trial by jury.

CONCLUSION

For the reasons set forth above, I RECOMMEND that the Court GRANT Secretary Donovan/HUD's Partial Motion to Dismiss (Doc. No. 54);  as follows:

DISMISS Count I;

DISMISS, IN PART, Count II, to the limited extent that it asserts a claim for indemnification and also to the extent it asserts breach of contract claims purporting to reach beyond the six-year statute of limitation;

DISMISS, IN PART, Count III, to the limited extent that it seeks a declaration of rights and responsibilities concerning non-party contracts;

STRIKE the plea for prospective injunctive relief stated in paragraph C of page 7 of the Third-Party Complaint;  and

STRIKE the demand for trial by jury.

NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, and request for oral argument before the district judge, if any is sought, within fourteen (14) days of being served with a copy thereof.  A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

June 24, 2011